[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 8, 2002
THOMAS K. KAHN
CLERK

No. 01-13468

D. C. Docket No. 99-01025-CV-PCH

ALISA L. HOLMES,

Plaintiff-Appellant,

versus

WEST PALM BEACH
HOUSING AUTHORITY, a public
corporation,

Defendant-Appellee,

AMEFIKA GEUKA, an individual, KENNETH
HAWTHORNE, an individual, SCOTT BADESCH,
an individual,

Defendants.

Appeal from the United States District Court
for the Southern District of Florida

**(October 8, 2002)**

Before MARCUS, FAY and WINTER[*], Circuit Judges.

_____

[*] Honorable Ralph K. Winter, U.S. Circuit Judge for the Second Circuit,
sitting by designation.

WINTER, Circuit Judge:

Alisa L. Holmes appeals from a judgment reducing the damages awarded her by a jury after a trial before Judge Huck. Appellant brought the present action against her former employer, appellee West Palm Beach Housing Authority ("WPBHA"), for, inter alia, gender-based denial of a promotion (the "discrimination claim"), retaliatory termination in response to her complaints of gender bias (the "retaliation claim"), both under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and for common law defamation (the "defamation claim").

On appeal, appellant claims error in the district court's granting of WPBHA's post-trial motion for remittitur, which reduced the total lost back-pay/benefits awarded to appellant from $161,000 to $3,300. Although a special verdict jury interrogatory contained a misstatement, we conclude that it did not affect the issue on appeal. Because the evidence and liability findings would not, as a matter of law, support a back-pay/benefits award of more than $3,300, we affirm.

I.

Appellant was employed as WPBHA's Deputy Director of Finance/Administration beginning in July 1995. She reported to WPBHA's Executive Director, Samuel Simmons. Simmons later left that position, and, in

2

March of 1998, WPBHA sought applicants for the Executive Director position. According to appellant, she was qualified for the Executive Director position, applied for the position, placed near the top in a ranking of forty applicants, and yet was not offered the position after the applicants (all male) ranked ahead of her declined employment offers. Appellant's complaint alleged that on August 27, 1998 she complained to several members of the board of WPBHA that she had not been offered the position of Executive Director because of her gender.

Over the same time period, appellant initiated a process whereby certain employees of WPBHA, including appellant, were reimbursed in cash for unused compensatory time accrued by working overtime. According to WPBHA, such reimbursements were contrary to WPBHA policy and past practice. On or about July 31, 1998, a total of approximately $20,000 was paid to employees in lieu of compensatory time, approximately $10,000 of which was paid to appellant. The WPBHA board directed an internal review of the payments, and, at a special meeting convened on October 1, 1998 to discipline appellant, the board voted to terminate appellant's employment. In September 1998, various allegedly defamatory statements by WPBHA board members concerning appellant's role and conduct in connection with the payments were published in local newspapers.

At trial, appellant pursued the three claims mentioned above. The

3

discrimination claim asserted that WPBHA refused to offer her the position of Executive Director because of her gender, in violation of Title VII. The retaliation claim asserted that the reason for the termination of her employment by WPBHA was to retaliate against her for claiming gender discrimination, also in violation of Title VII. The defamation claim asserted that the statements made by WPBHA board members to local newspapers constituted actionable defamation. A four-day trial was conducted before a jury.

According to the district court's April 17, 2001 Omnibus Order on Post-Trial Motions (the "Omnibus Order"), the parties agreed in open court during trial that, in the event appellant prevailed on the discrimination claim but failed on the retaliation claim, lost back-pay/benefits would be limited to the difference in salary and benefits between the two positions from the denial of promotion to appellant's termination on October 1, 1998. This agreement, the existence of which is denied by appellant, was not reduced to writing and is not reflected in the transcript. However, in neither the district court nor in this court did appellant point to any evidence that the lost back-pay/benefits over the period would be more than $3,300.

With regard to liability on the discrimination claim, no party claims error in either the instructions or the special verdict form. The verdict form contained two

4

questions relating to liability: the first asked whether gender was a substantial or motivating factor in appellee's decision not to promote appellant; the second, reflecting appellee's "same decision" defense,[1] asked whether she would have been denied the position "for other reasons even without considering gender." The jury answered "Yes" to the first question, i.e., gender was a factor in the denial of promotion, and "No" to the second, i.e., she would not have been denied promotion for other legitimate reasons. The jury therefore found WPBHA liable on the discrimination claim.

The problem on appeal arises from the jury's response to the verdict form questions regarding the retaliation claim. We begin with a discussion of the jury instructions. No claim is made that the jury was misled as to the elements of a valid retaliation claim. With regard to one of WPBHA's defenses to that claim, the jury was also told:

> On [the retaliation claim], you should consider the [same decision] defense of the Defendant. An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as its action is not a retaliation for a statutorily protected right.

---

[1]For the reasons stated in the district court's Omnibus Order, we reject appellant's claim that WPBHA failed to plead the "same decision" affirmative defense. See Omnibus Order, Joint App. at 8:2-3.

An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief.

Appellant does not claim error in the instruction on the same decision defense. The special verdict form asked two questions regarding the retaliation claim, followed by an instruction regarding consideration of damages relating to that claim. We quote the pertinent portion of that form:

**[ Retaliation Claim]**

3. Do you find from a preponderance of the evidence that the Plaintiff's complaints of and reporting alleged gender discrimination was a substantial or motivating factor that caused Defendant to suspend or terminate her employment?

_____YES _____NO

4. Do you find from a preponderance of the evidence that the Plaintiff would have been terminated for other legitimate, non-discriminatory reasons even without considering gender?

_____YES _____NO

If your answer to #4 is YES and/or NO to #3 you have found for the Defendant and should not consider this claim in any damage award to the Plaintiff under

6

question #5.

No objection was made by either party to the instructions or jury form with regard to the retaliation claim.

As noted, the jury answered "Yes" and "No" to the corresponding questions relating to gender discrimination, thereby finding WPBHA liable on that claim. As to the retaliation claim, however, the jury answered "Yes" and "Yes" to the questions quoted immediately above, seemingly accepting WPBHA's "same decision" defense and rendering a verdict for WPBHA on that claim.

With regard to question 5 relating to damages, the jury initially requested that the court determine damages, indicating "court decision" on the verdict form. The district court then instructed the jury to continue deliberations over a damages award, whereupon the jury awarded $161,000 for lost back-pay/benefits and $16,000 for emotional pain and suffering. In answering questions 6–8, the jury found WPBHA liable for defamation, and awarded appellant $40,000 in damages for emotional pain and suffering.

Claiming that a back-pay/benefits award of $161,000 was disproportionate to the evidence of damages attributable to the discrimination claim alone -- the retaliation claim having been rejected -- and in excess of the claimed stipulation

regarding damages under the discrimination claim, WPBHA moved for remittitur. The district court granted the motion in its Omnibus Order, reducing the $161,000 figure to $3,300, without offering appellant the option of a new trial. The district court explained its decision as follows:

> [T]he Court finds the jury's award of $161,000.00 is grossly disproportionate and bears no rational relationship to the evidence at trial. Under these circumstances, the court may impose a remittitur to correct the error. Although the trial court may not generally unconditionally reduce an excessive award without affording the prevailing party the option of a new trial, it may do so when "it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there."

Omnibus Order, Joint App. at 8:8 (citations omitted). The remittitur was reflected in the final judgment entered by the district court. This appeal followed.

## II.

Appellant's brief does not dispute that, if she was lawfully terminated on October 1, 1998, her lost back-pay/benefits on the discrimination claim could not exceed $3,300 -- the difference in salary and benefits between her position and that of Executive Director from the time of denial of the promotion to her termination on October 1, 1998.

Central to her argument that the district court erred in reducing the jury's

8

award of $161,000 is the fact that question 4 was improperly worded with regard to the "same decision" defense offered by WPBHA to the retaliation claim. Question 4 did not precisely ask the jury whether WPBHA would have made the same decision to terminate appellant for legitimate, non-discriminatory reasons even if retaliation was a factor. Rather, it asked whether WPBHA "would have" terminated appellant for "other legitimate" reasons "even without considering gender." (Emphasis added). Because the quoted final phrase of question 4 is a misstatement, appellant argues as follows:

> Interrogatory No. 4 poses a legally irrelevant question, namely whether Ms. Holmes would have been terminated without regard to her gender. In other words, No. 4 did not require the jury to deliberate about whether legitimate reasons existed to fire Ms. Holmes even without the improper retaliatory motivation, and, even more importantly, No. 4 also did not ask the jury to consider whether the Authority would have made the same decision on the same day if it had not improperly retaliated. Instead, No. 4, when construed as it is written, simply asked the jury to decide whether Ms. Holmes would have been terminated at some point for non-discriminatory reasons.

The argument mounted by appellant, therefore, is that, because the final phrase of question 4 mistakenly referred to gender instead of retaliation, the jury understood it to relate solely to the damages period for the discrimination claim, i.e., whether, if appellant had been promoted to Executive Director, she would

9

eventually (after October 1, 1998) have been legitimately terminated anyway.  In her view, the answer "Yes" justifies the $161,000 award as a finding of lost back-pay/benefits over such an extended period of time as a result of the denied promotion.  The question's misstatement is thus relied upon not as error to be corrected on appeal -- appellant never registered an objection to it -- but rather as a justification for the lost back-pay/benefits award on the discrimination claim based on continued employment long after October 1998.  This argument is profoundly flawed, however.

To be sure, question 4 erroneously repeated a portion of the language used in question  2.  A properly worded question 4 would have asked whether the jury found that appellant would have been "terminated for other legitimate, non-discriminatory reasons other than <u>retaliation</u>" rather than "<u>gender</u>."  <u>See</u> <u>Merritt v. Dillard Paper Co.</u>, 120 F.3d 1181, 1191 (11th Cir. 1997).  Nevertheless, the misstatement, when viewed in context, neither justifies the jury's award nor is error prejudicial to appellant.

First, appellant's argument makes sense only if one ignores the facts that she was terminated on October 1, 1998, and her claim for damages after that date was based solely on the allegation of unlawful retaliation.  In effect, she is arguing that the misstatement in question 4 caused the jury to believe that the fact of her

October 1, 1998 termination and her resultant retaliation claim somehow dropped entirely out of the case. That scenario, however, is wholly implausible.

Appellant's theory at trial was that she was unlawfully denied promotion because of gender discrimination and should be awarded damages for that denial up to October 1, 1998. On that date, she argued, she was unlawfully discharged for retaliatory purposes and should be awarded damages for that unlawful termination for a period of time after October 1, 1998. We find it inconceivable that the misstatement in question 4 radically transformed the case from one involving discrimination in promotion followed by a retaliatory termination to one involving only discrimination in promotion.

Appellant points to nothing suggesting that, at the time of question 4's submission to the jury, the parties or the court viewed it as an inquiry regarding anything but WPBHA's "same decision" defense to the retaliation claim. Question 2 inquired about a similar defense with regard to her discrimination claim, and question 4 was clearly a counterpart regarding the retaliation claim. Moreover, a question of the sort hypothesized by appellant, which related to damages solely on the discrimination claim, would have been entirely out of place in the section of the verdict form that was exclusively related to the retaliation claim. Indeed, the instructions following question 4 made it clear to the jury beyond any doubt that a

11

"Yes" answer to question 4 was not to be a speculative judgment regarding what might have happened had appellant not been terminated on October 1, 1998, but rather would constitute a verdict for WPBHA on the retaliation claim. We see no reason, therefore, why a jury would have viewed question 4 as prompting an inquiry into an issue that was not otherwise pursued in the case and was unrelated to the retaliation claim. A misstatement occurred, but without consequences justifying the damages award for lost back-pay/benefits on the discrimination claim.

Second, we also conclude that the misstatement in question 4 was harmless error. As quoted above, the jury had been told in the district court's instructions that it must consider the "same decision" defense to the retaliation claim, and question 4's explicit reference to "terminated for other legitimate, non-discriminatory reasons" made it clear that question 4 related to that defense, notwithstanding the final phrase. Even more significantly, the jury had been told that retaliation was not a legitimate reason for appellant's termination. Therefore, a "Yes" answer to question 4 still required the jury to find a "legitimate" reason for termination, a fact that renders the erroneous final phrase meaningless surplusage

rather than prejudicial error.[2]

We therefore agree with the district court that the $161,000 for the lost back-pay/benefits on the discrimination claim was excessive as a matter of law. We also believe the district court did not abuse its discretion in declining to offer appellant the option of a new trial in lieu of accepting remittitur. Given that the lost back-pay/benefits from the denial of promotion to October 1, 1998 are quantifiable, it is "apparent as a matter of law that certain identifiable sums included in the verdict should not have been there."[3] Carter v. District of Columbia, 795 F.2d 116, 134 (D.C. Cir. 1986). It was therefore not an abuse of discretion, see Bonura v. Sea

---

[2]As noted in the text, appellant does not really claim the error in question 4 to be reversible error. If she did, however, she would have to meet the requirements of reversal for plain error as a result of the failure to object at trial. Those requirements are: (i) an error occurred; (ii) the error was plain; (iii) the error affected substantial rights; and (iv) not correcting the error would seriously affect the fairness of the judicial proceeding. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999) (citing United States v. Olano, 507 U.S. 725, 732 (1993)). There was error, but, even if it was plain, it neither affected substantial rights nor affected the fairness of the proceeding.

[3]In this regard, we do not rely on the disputed stipulation. See S.D. Fla. Local Rule 11.1(D)(6) ("No agreement between parties or their attorneys, the existence of which is not conceded, in relation to the proceedings or evidence in an action, will be considered by the Court unless the same is made before the Court and noted in the record or is reduced to writing and subscribed by the party or attorney against whom it is asserted."). However, appellant's brief does not argue that, if lost back-pay/benefits are recoverable only to October 1, 1998, they exceed $3,300.

Land Serv., Inc., 505 F.2d 665, 669 (5th Cir. 1974), to reduce unconditionally the damage award returned by the jury .

We therefore AFFIRM.  Appellee's motion for damages, attorney's fees and costs pursuant to Federal Rule of Appellate Procedure 38 is denied.