**Willie C. THOMAS, Plaintiff,**

v.

**TROY CITY BOARD OF EDUCATION, et al., Defendants.**

**Civil Action No. 03–T–316–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 9, 2004.

---

Terry G. Davis, Afrika C. Parchman, Davis & Hatcher, LLCP, Theron Stokes, Alabama Education Association, Montgomery, AL, for Plaintiff.

James R. Seale, Elizabeth B. Carter, Hill, Hill, Carter, Franco, Cole & Black, David R. Boyd, Dorman Walker, JoClaudia Moore, Balch & Bingham, Larry E. Craven, Department of Education, Montgomery, AL, Richard F. Calhoun, Calhoun, Faulk, Watkins & Faircloth, LLC, Troy, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Willie C. Thomas filed this lawsuit claiming that he was not appointed to a position superintendent of Troy City Schools because he is African–American.[1] He rests his claim on Titles VI and VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000d, 2000e through 2000e–17), the Civil Rights Act of 1866 (42 U.S.C.A. § 1981), and the Thirteenth and Fourteenth Amendments to the United States Constitution (as enforced through 42 U.S.C.A. § 1983), and names as defendants the Troy City Board of Education and it members, in their individual and official capacities. This court's jurisdiction is proper under 42 U.S.C.A. § 2000e–5(f)(3), 28 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights).

Currently before the court is defendants' motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [his] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [his] case at trial.'" *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To this end, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Thomas was a Troy City School System employee for over 25 years. For five years, he held the position of assistant superintendent; he also spent nine years employed at the "central office," where he performed various administrative tasks.

---

1. This lawsuit is an offshoot of another case, *Hall v. Alabama Assoc. of Sch. Bds.,* 326 F.3d 1157 (11th Cir.2003).

When former Superintendent Johnny Vaughn retired from his position with Troy City schools, Thomas applied for it.

Eighteen individuals applied for the position of superintendent, and the Alabama Association of School Boards, undertaking the initial screening of applicants, determined that eight of these candidates were qualified for the position. Of these eight, four were chosen for interviews. Defendants state that it determined which candidates to interview by having each of the five board members rank the candidates, from one to eight, tallying all the votes, and offering interviews to the four candidates with the best combined score.[2] Only one of the five board members (one of the two African–American members) ranked Thomas in the top four candidates, and Thomas, like the other African–American candidates, was not offered an interview. Henry Jones, a white male, was hired for the position.

## III. DISCUSSION

Title VII states: "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's race." 42 U.S.C.A. § 2000e–2(a). Thomas claims that he was not hired for the superintendent position because of his race.

■ Such claims are analyzed using the *McDonnell Douglas* burden shifting technique. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas* approach,

the plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1824. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). The plaintiff's prima-facie case raises a presumption of illegal discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527–28 (11th Cir.1997), *cert. denied*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

■ If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment action. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir.1997). "This intermediate burden is 'exceedingly light.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir.1994)). The defendant has a burden of production, not persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253–55, 258, 101 S.Ct. at 1093–94, 1096.

2. During the pre-trial conference, counsel for the parties represented to the court that, of the eight candidates, three were African–American. Counsel further represented that none of the three African–American candidates was ranked in the overall "top four" after all the votes were tallied, and therefore none was offered an interview. However, this information was not submitted to the court in an admissible sworn manner at all, let alone within the submission time on the summary-judgment motion, and is therefore not part of the record and will not be considered by the court.

■ Once the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman*, 229 F.3d at 1024 (citations omitted).

■ However, the establishment of a prima-facie case does not, in itself, entitle the plaintiff to defeat a summary-judgment motion. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1389 (11th Cir.1983). After the defendant proffers a nondiscriminatory and legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman*, 229 F.3d at 1037.

■■ Thomas has established a prima-facie case. To make out a prima-facie case of discrimination against the board, Thomas need show only the following: (1) He is a member of a protected class, (2) he was qualified for the position, (3) he was denied the position, and (4) some additional factor that would allow an inference of discrimination. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (requiring that a plaintiff show "circumstances which give rise to an inference of unlawful discrimination"). Thomas is a member of a protected class; he was also qualified for the position, for

the Alabama Association of School Boards selected him as one of the eight qualified candidates for further review.[3] He was not offered an interview, and the individual who was hired is a white male. To establish a prima-facie case, Thomas does not need to show he was equally qualified or more qualified than Jones. He need only show that he was qualified for the job. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir.1998). Thomas has shown this.

■ Although Thomas has established a prima-facie case, defendants have meet their burden of production by articulating a legitimate, nondiscriminatory reason for the school board's decision. Defendants contend that Thomas was not hired because, in the school board's opinion, he was not the most qualified candidate for the position. Doug Patterson, who in 1996 was chairman of the board, testified in his deposition that his main criterion for choosing a new superintendent was the ability to improve academics in Troy City Schools: "I was looking primarily for a superintendent who had emphasis on academic programs and the ability to understand and structure academic programs so that we could improve those programs for the benefit of our students. That was the primary thing I was looking for." Although Thomas had extensive experience with the city school system, his primary experience was in the area of administering federal programs, student discipline, and physical plant issues.[4] Jones, however, gained experience with academic programs first as a teacher (since 1972), and then as principal of an elementary school.[5]

Defendants also contend that Jones was more qualified for the position because he

---

3. Plaintiff's brief in opposition to summary judgment, filed December 22, 2003 (Doc. no. 26), exhibit 2 (affidavit of Sandra Sims-de-Graffenfried.)

4. Defendants' motion for summary judgment, filed November 17, 2003 (Doc. no. 19), exhibit G (deposition of Douglas C. Patterson), at 16.

5. *Id.* at 38.

attained a higher level of education than Thomas. Jones has an AA certification, which, according to Thomas, is "a step above a master's" degree.[6] Thomas has a master's degree, although he has made significant steps towards obtaining his doctorate, which is a more advanced degree than an AA certification.

Last, defendants maintain that the school board considered Thomas less qualified than the candidates interviewed because there was some question about his credit history. Apparently, Alabama Association of School Boards Director Sandra Sims-deGraffenfried told board members that Thomas had an unsatisfactory credit rating.[7] Thomas contends that the information told to the board about his credit rating is inaccurate, and that his credit history may have been intentionally misrepresented for discriminatory reasons.[8] However, counsel for Thomas admitted during oral argument on the summary-judgment motion at the pretrial hearing, there is no evidence that the board relied on information they knew to be inaccurate. Furthermore, the board's good-faith reliance upon Sims-deGraffenfried's concerns about Thomas's credit history, even if based on faulty information, would be a legitimate, nondiscriminatory reason not to hire Thomas. *See Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 755 (11th Cir.2002) ("An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief."); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir.2000) (" 'Pretext is not demonstrated by showing simply that the employer was mistaken.' ") (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir.1995)). As Patterson explained, one of the main responsibilities of a superintendent is "that he's the chief fiscal officer for the school system and has to enure that money is managed in an efficient and effective manner."[9] Therefore, consideration of Thomas's credit history, even if the history was inaccurate, is a legitimate consideration.

■ Because the board has articulated legitimate, nondiscriminatory reasons for its decision, Thomas must be afforded an opportunity to demonstrate that the board's proffered reasons are pretextual. Thomas attempted to do this by trying to show that he was more qualified for the position than Jones. The evidentiary standard in the Eleventh Circuit Court of Appeals, where claims of discrimination in hiring are based on evidence that the plaintiff was more qualified than the individual hired, is clear: "[W]here a claim of discrimination is based on relative qualifications, 'disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.' " *Hall v. Alabama Assoc. of Sch. Bds.*, 326 F.3d 1157, 1175 (11th Cir.2003) (quoting *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir.1999)). The standard is so demanding because, according to the Eleventh Circuit, federal courts "are not in the

---

6. Plaintiff's brief in opposition to summary judgment, filed December 22, 2003 (Doc. no. 26), exhibit 1 (deposition of Willie C. Thomas), at 87.

7. Defendants' motion for summary judgment, filed November 17, 2003 (Doc. no. 19), exhibit G (deposition of Douglas C. Patterson), at 24.

8. Sims-deGraffenfried is not a defendant in the case at bar.

9. Defendants' motion for summary judgment, filed November 17, 2003 (Doc. no 19), exhibit G (deposition of Douglas C. Patterson) at 23.

business of adjudging whether employment decisions are prudent or fair. Instead [the] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999).

■ Thomas has not met the high evidentiary standard the Eleventh Circuit has imposed for demonstrating that a hiring decision was pretextual on the basis of disparities between the qualifications of the aggrieved party and the individual hired.

In addition, Thomas's theory of intentional discrimination under § 1981 and the Thirteenth and Fourteenth Amendment, as enforced through § 1983, fails for the same reasons that his Title VII theory fails. *Hall,* 326 F.3d at 1175.

## IV. CONCLUSION

The court notes that Thomas's inability to show that the school board's decision was impermissibly motivated by discriminatory animus does not necessarily mean that no discrimination occurred in the selection process. Yet the court also has no reason to doubt that the board chose the candidate it believed would be best for the job, and that each board member can honestly protest that he or she did not harbor any discriminatory intent. The judicial focus on the search for unconstitutional discriminatory animus obscures the fact that it is possible that the board chose the individual it perceived to be the "best" candidate and, yet still, that Thomas was subjected to discrimination; the two are not mutually exclusive. "By insisting that a blameworthy perpetrator be found before the existence of racial discrimination can be acknowledged, the Court creates an imaginary world where discrimination does not exist unless it was consciously intend-

ed." Charles R. Lawrence III, *The Id, The Ego, and Equal Protection: Reckoning with Unconscious Racism,* 39 Stan. L.Rev. 317, 324–25 (1987).

As previously noted, the decision was made by each board member ranking the candidates with a rating of one through eight, tallying the rankings, and offering interviews to the four candidates with the best combined scores. Although not part of the record, counsel represented to the court at oral argument that, out of the eight candidates that met the minimum qualifications for the position, three were African–American.[10] However, of the four individuals picked to interview, all were white.

Such subjective decision-making processes are particularly susceptible to being influenced not by overt bigotry and hatred, but rather by unexamined assumptions about others that the decisionmaker may not even be aware of—hence the difficulty of ferreting out discrimination as a motivating factor. "Thus," Professor Lawrence explains, "an individual may select a white job applicant over an equally qualified black and honestly believe that this decision was based on observed intangibles unrelated to race. The employer perceives the white candidate as 'more articulate,' 'more collegial,' 'more thoughtful,' or 'more charismatic.' He is unaware of the learned stereotype that influenced his decision. Moreover, he has probably also learned an explicit lesson of which he is very much aware: Good, law-abiding people do not judge others on the basis of race. Even the most thorough investigation of conscious motive will not uncover the race-based stereotype that has influenced his decision." *Id.* 324–25.

10. *See supra* note 2.

Of course, the court has not been presented with any evidence demonstrating "that these particular individuals carried within them the taints of the attitude of white supremacy, and allowed those taints to color or shape their choice of superintendent," *Hall,* 326 F.3d at 1170–71, and "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII," *Denney v. City of Albany,* 247 F.3d 1172, 1185 (11th Cir.2001); nevertheless the board members may still want to keep the above observations in mind when making future hiring decisions.

For the reasons stated, defendants are entitled to summary judgment. An appropriate judgment will be entered.