[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10666

_____

D.C. Docket No. 4:13-cv-00534-RH-CAS


MARIO MARTINEZ,

Plaintiff-Appellant,

versus

SECRETARY OF STATE OF THE UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 8, 2016)

Before TJOFLAT, MARCUS, and ROGERS,[*] Circuit Judges.

PER CURIAM:

---

[*] Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by designation.

After the Department of State revoked his U.S. passport, Mario Martinez brought a declaratory judgment action against the Secretary of State, pursuant to 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201(a), seeking a judicial declaration that he was born in the United States and is, therefore, a U.S. citizen.  After a bench trial, the district court specifically found that Martinez was born in Mexico and is, therefore, not a U.S. citizen.  On appeal, Martinez contends that the district court clearly erred in finding that he was born in Mexico, rather than in the United States.  He also argues, for the first time on appeal, that, when a § 1503(a) plaintiff presents a U.S. birth certificate that was filed contemporaneously with his birth, that birth certificate should presumptively establish that the plaintiff is a U.S. citizen.  After careful review, and with the benefit of oral argument, we affirm.

I.

The essential facts adduced at trial are these.  Martinez was born on October 12, 1974, to Maria del Socorro Reyes ("Reyes") and Sebastian Martinez -- both Mexican citizens.  The birth was registered in Brownsville, Texas, by a woman named Guadalupe Gonzalez, and the Texas Department of Health, Bureau of Vital Statistics issued a birth certificate showing that Martinez had been born in Brownsville and that Gonzalez, as midwife, was present for the birth. Nevertheless, Martinez grew up and attended elementary school in Cerritos, San

2

Luis Potosi, Mexico.  At some point he obtained a U.S. passport, and, at the age of 15, he moved to the United States to live with an uncle in Florida.

Martinez later married a Mexican woman, whom he met in Mexico. Martinez filed a visa petition on behalf of his wife, and, while processing the petition, the Department of State began to suspect that Martinez had not been born in the United States.  On October 3, 2007, Martinez, his mother, and his wife went to the U.S. Consulate in Ciudad Juarez, Mexico, where a fraud investigator in the Consulate's Fraud Prevention Unit questioned Martinez's mother.  During the questioning, the fraud investigator presented Reyes with a Mexican birth certificate, issued on November 18, 1986, which showed that Martinez had been born on October 12, 1974, in Cerritos, San Luis Potosi, Mexico.   At the end of the interview, the fraud investigator typed up a "sworn statement," which Reyes signed, and which stated that Reyes had given birth to Martinez in Cerritos, San Luis Potosi, Mexico, and her husband's aunt had paid a midwife to obtain a U.S. birth certificate.   The statement referred to Martinez as "Martin," rather than "Mario."   Reyes, who had obtained U.S. permanent resident status through Martinez, also signed a Form I-407, Abandonment of Lawful Permanent Resident Status form, which stated, among other things, "My son was born in Mexico, and not in the U.S., as stated in [his] fraudulently obtained Texas birth certificate."

3

Martinez's subsequent request for an official copy of his birth certificate from the Texas Registrar was denied, based on information the Registrar had received from the U.S. Department of State. But, after a hearing in September 2009, at which Reyes testified by phone, the Texas Department of State Health Services ("Texas DSHS") declared Martinez's Texas birth certificate valid and ordered the Registrar to give him an official copy. Martinez also instituted proceedings in Mexican court to invalidate his Mexican birth certificate.

However, on June 14, 2011, the Department of State sent Martinez a letter, informing him that it had revoked his U.S. passport, pursuant to 22 C.F.R. § 51.62(b), based on his mother's sworn statement at the U.S. Consulate that he was born in Mexico and the Mexican birth certificate. Martinez subsequently filed this declaratory judgment action, seeking a judicial declaration that he was born in the United States, is a U.S. citizen, and is entitled to possess a U.S. passport.

At trial, Martinez presented his Texas birth certificate; a baptismal certificate from the Roman Catholic Diocese of San Luis Potosi, Mexico, issued on January 30, 1975, which stated that he had been born in Texas on October 12, 1974; a confirmation certificate from the same Diocese, reporting the same information; the Texas DSHS decision; and an April 2012 Mexican court judgment invalidating his Mexican birth certificate. In addition, Martinez and his father testified, and Martinez introduced deposition testimony that Reyes had given

4

on two prior occasions.  In her deposition testimony, Reyes testified that, when she felt labor was imminent, she crossed the U.S.-Mexico border so she could give birth to Martinez in Brownsville; the statement she gave at the U.S. Consulate on October 3, 2007, was false and had been coerced; and she did not willingly abandon her U.S. resident status.  Reyes and Martinez's father both testified that they obtained the Mexican birth certificate when Martinez was 12 years old, solely to allow him to continue studying in Mexican schools.

The Department of State introduced Martinez's Mexican birth certificate, Reyes's October 3, 2007 sworn statement, and the abandonment of lawful resident status form Reyes signed that day.  The Department of State also introduced deposition testimony from Elizabeth Lerma-Shaffer, who was the deputy or acting chief of the Fraud Prevention Unit at the U.S. Consulate in Ciudad Juarez in October 2007.  Lerma-Shaffer did not specifically recall Martinez's case, but she recognized her signature on Reyes's sworn statement.  Lerma-Shaffer testified that, as a general practice, she ensured that all sworn statements she signed off on were voluntarily given.  Finally, the Department of State introduced live testimony from Peter Ojeda, who was an immigrant visa specialist at the Consulate in Ciudad Juarez in October 2007.  Ojeda did not specifically recall Martinez's case, either, but he recognized his handwriting and signature on Reyes's abandonment of lawful

5

permanent resident status form.  He testified that, as a general practice, he did not coerce individuals into signing the form.

The district court found that Martinez was born in Mexico and he was, therefore, not a U.S. citizen.  The court specifically discredited the testimony and other evidence showing that Reyes had crossed the U.S.-Mexico border to give birth to Martinez in Brownsville, Texas, and found that Martinez's parents had fraudulently obtained the Texas birth certificate.  The court credited Lerma-Shaffer's and Ojeda's testimony and found that Reyes's statement at the Consulate that she had given birth to Martinez in San Luis Potosi, Mexico was true and not the product of coercion or duress.  The court noted the contrary findings of the Texas DSHS and Mexican court, which were not binding on the district court or on the Department of State.  Finally, the court noted that the burden of proof was on Martinez, but said "the result would be the same even if the burden was on the defendant; the evidence is not in equipoise."

Martinez filed this timely appeal.

## II.

In a § 1503(a) declaratory judgment action,[1] the plaintiff has the burden of proving that he is a U.S. citizen by a preponderance of the evidence.

---

[1] Section 1503(a) states:

If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any

See De Vargas v. Brownell, 251 F.2d 869, 871 (5th Cir. 1958); Mathin v. Kerry, 782 F.3d 804, 807 (7th Cir. 2015) (citing 22 C.F.R. § 51.40).  We review the district court's conclusions of law following a bench trial de novo and its factual findings for clear error.  Tartell v. S. Fla. Sinus & Allergy Ctr., Inc., 790 F.3d 1253, 1257 (11th Cir. 2015).  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently."  Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985).  That is, "[w]here there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous."  Id. at 574.

We review questions of law, including issues related to the applicable burden of proof, de novo.  First Vagabonds Church of God v. City of Orlando, 638 F.3d 756, 760 (11th Cir. 2011); see Columbus Mills, Inc. v. Freeland, 918 F.2d

department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.  An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a).

7

1575, 1580 (11th Cir. 1990).   However, we generally will not consider an issue that was not raised in the district court and is raised for the first time on appeal. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

A.

First, we can discern no clear error in the district court's finding that Martinez was born in Mexico.   Martinez asserts that the trial court erred in discrediting Reyes's deposition testimony because the court erroneously stated that Reyes did not say she was threatened or under duress, when she, in fact, said this numerous times.   We need not address the district court's reasoning on this issue, however, because, in any event, ample record evidence supported the district court's factual finding that Martinez was born in Mexico.   Reyes's sworn statement and I-407 form strongly suggested that Martinez was born in Mexico.   Those documents were corroborated by the testimony of Lerma-Shaffer and Ojeda, who indicated that they never coerced an interviewee into signing documents.   The district court thus did not clearly err by crediting the testimony of the two State Department employees instead of Reyes's contrary deposition testimony.   Nor has Martinez shown that the district court clearly erred in crediting Reyes's sworn statement over her contradictory deposition testimony because the sworn statement was typed by the fraud investigator and used the name Martin, rather than Mario.

8

Martinez claims that the district court erred by crediting Lerma-Shaffer, since she testified in her first deposition that she had supervised a staff of four fraud investigators, whereas, in her second deposition, she testified that she had supervised a staff of six. However, Martinez fails to show how this inconsistency was particularly significant, let alone so important that it thoroughly undermined the district court's credibility choices. Lerma-Shaffer consistently testified in both of her depositions about the process she and the fraud investigators used for investigating cases and taking statements, that the fraud investigators did not have a practice of coercing false statements, that she went over the statements with declarants before signing them, and that she would not have signed off on a statement if the declarant had indicated it was false. Martinez also says that Lerma-Shaffer's testimony was incredible because she was ambiguous as to whether she was present during the fraud investigators' interviews. But Lerma-Shaffer was clear on this point: she testified that she supervised the interviews -- which took place in cubicles -- from her office, which was about 5-10 feet away from the cubicles. Thus, her testimony makes clear that she was present, and observing, while the interviews were going on, but she did not literally participate in the interviews.

Finally, Martinez contends that Lerma-Shaffer's testimony was incredible because she maintained that she could not remember her interactions with Reyes,

9

while her "recollection of other cases seems very clear." Martinez cites to the November 2014 deposition, where Lerma-Shaffer, when asked, recalled a "circumstance[] where someone who was being interviewed was in distress." Lerma-Shaffer testified about a "senior lady," who was diabetic and hadn't eaten all day, and who said she was feeling faint. Lerma-Shaffer recalled that she and her staff brought the woman "a soda and some probably crackers or something to . . . keep her stable," and "asked her if she wanted to continue or to terminate the interview, and she said she just wanted to continue." We are unconvinced that Lerma-Shaffer's ability to recall this unrelated episode means she must necessarily have recalled her interview with Reyes and had been lying about not remembering it. Again, the district court was free to make the credibility determinations it plainly made against Martinez.

In short, Martinez has not shown that the district court clearly erred in crediting Reyes's sworn statement and the consular employees over Reyes's deposition testimony and the documentary evidence showing that Martinez was born in Brownsville. While Martinez's contrary view of the evidence has some record support, the district court did not clearly err in taking an alternative view. See Anderson, 470 U.S. at 573-74.

B.

Next, Martinez urges us, for the first time, to establish a new rule that, when a § 1503(a) plaintiff presents a U.S. birth certificate that was filed contemporaneously with his birth, that birth certificate presumptively establishes the plaintiff's U.S. citizenship, particularly where the plaintiff can show that he has lived in the United States for an extended period of time.  Martinez acknowledges that he did not present this argument in district court.  However, citing to United States v. Olano, 507 U.S. 725, 731-32 (1993), he contends that we should review the argument for plain error.  He maintains that reversal is warranted under the plain-error standard because his trial counsel clearly erred by not raising the presumption issue in district court.  He also asserts that his substantial rights were affected by the Department of State's revocation of his U.S. passport, which, he says, denied him of citizenship rights that were conferred upon him at birth. Martinez further argues, for the first time on appeal, that the government's revocation of his U.S. passport without first holding a hearing strains due process, and that the presumption he seeks is necessary to avoid a due process violation in his § 1503(a) case.

In civil cases, like this one, we generally decline to consider an issue raised for the first time on appeal.  Access Now, 385 F.3d at 1331.  In Access Now, we explained that we may make an exception to this general rule in five circumstances, namely, if:  (1) the issue involves a pure question of law and our

11

refusal to consider it would result in a miscarriage of justice; (2) the party had no opportunity to raise the issue in the district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern. Id. at 1332. However, we have also applied the plain-error standard (which notably originates from Rule 52(b) of the Federal Rules of Criminal Procedure) in some civil cases. See, e.g. Holmes v. W. Palm Beach Hous. Auth., 309 F.3d 752, 757 n.2 (11th Cir. 2002); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999); see also S.E.C. v. Diversified Corp. Consulting Group, 378 F.3d 1219, 1227 n.14 (11th Cir. 2004) ("[A]lthough the Civil Rules, unlike the Criminal Rules, do not contain a formal provision allowing the appellate courts to notice plain error, the appellate courts have held in a few cases that despite the absence of an objection they may consider an error so fundamental that it may have resulted in a miscarriage of justice." (quotation omitted)). Under the plain-error standard, the appellant has the burden to establish four things: (1) an error occurred; (2) the error was plain; (3) the error affected his substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity, or public reputation of the judicial proceeding. Farley, 197 F.3d at 1329 (citing United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999) (citing Olano, 507 U.S. at 732)); see United

12

States v. Rodriguez, 398 F.3d 1291, 1298-1300 (11th Cir. 2005); United States v. Sosa, 782 F.3d 630, 636 (11th Cir. 2015).

Martinez does not argue that any of the five exceptions set forth in Access Now are present here.  Even if we were to apply the plain-error standard in this case, which we have said "rarely applies in civil cases," Ledford v. Peeples, 657 F.3d 1222, 1258 (11th Cir. 2011), Martinez has not satisfied his burden on any of the four requirements, although he would be obliged to satisfy all four requirements by a preponderance of the evidence.  See Rodriguez, 398 F.3d at 1299-1301.  For starters, it's not at all clear to us that any error occurred, let alone that the error was plain or obvious.  As for the second requirement, our case law makes clear that "where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

Martinez has offered no argument as to how the district court's alleged error in failing to apply a presumption of U.S. citizenship based on his Texas birth certificate was plain.  In fact, he has pointed to no basis for the presumption he requests in the applicable statutes or regulations.  Rather, as he appears to recognize, the regulations, if anything, cut the other way.  Under 22 U.S.C. § 211a and 8 U.S.C. § 1504(a), the Secretary of State has the authority to "grant and issue

13

passports," and "to cancel any United States passport . . . if it appears that such document was illegally, fraudulently, or erroneously obtained from, or was created through illegality or fraud practiced upon, the Secretary."  22 U.S.C. § 211a; 8 U.S.C. § 1504(a).  The regulations specifically provide that an applicant for a U.S. passport "has the burden of proving that he or she is a U.S. citizen or non-citizen national," 22 C.F.R. § 51.40, and "[t]he applicant must provide documentary evidence" to satisfy that burden, id., § 51.41.  And, while section 51.42(a) provides that a U.S. birth certificate is "[p]rimary evidence of birth in the United States," id., § 51.42(a), section 51.45 provides that "[t]he Department [of State] may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, including evidence in addition to the evidence specified in 22 CFR 51.42," id., § 51.45 (emphasis added).

Nor has Martinez identified a Supreme Court or Eleventh Circuit case applying the presumption he requests.  See Lejarde-Rada, 319 F.3d at 1291.  He cites to an unpublished Fifth Circuit decision, Garcia v. Kerry, 557 F. App'x 304 (5th Cir. 2014), but in that case the Fifth Circuit merely upheld the district court's finding that the plaintiff was born in Mexico.  The district court made that finding upon being presented with a Mexican birth certificate recording the plaintiff's birth on a certain date and a U.S. birth certificate recording his birth approximately ten

14

months later.  Garcia, 557 F. App'x at 306-07, 310.  Under these circumstances, the district court found it was more likely the plaintiff was born in Mexico and the U.S. birth certificate was created later.  Id. at 310.  Notably, in Garcia, the Fifth Circuit did not establish a presumption of any kind, and it certainly did not establish a presumption of U.S. birth for a § 1503(a) plaintiff who presents a U.S. birth certificate filed contemporaneously with his birth.  See id.  Nor indeed can we find any federal case that has ever created the presumption Martinez urges us to adopt.

Martinez's substantial-rights argument also falls short.  As we've already explained at some length, this is not a case where no evidence or only scant evidence supported the district court's factual finding.  Finally, Martinez has made no showing that the district court's determination seriously affected the fairness, integrity, or public reputation of the judicial proceeding.

We also can find no merit to Martinez's claim that the government's revocation of his U.S. passport without first holding a hearing denied him due process.  Section 1503(a) affords individuals like Martinez robust means for challenging administrative denials of their U.S. citizenship in federal court. See 8 U.S.C. § 1503(a).  In fact, in this case, Martinez had a full opportunity, during the district court bench trial, to challenge the Department of State's revocation of his U.S. passport, present evidence of his own, and confront and

15

cross-examine the government's evidential presentation.  Again, we can discern no error, let alone plain error.

Accordingly, we affirm the judgment of the district court declaring that Martinez was born in Mexico and is not a U.S. citizen.

**AFFIRMED.**