# United States Court of Appeals
# for the Fifth Circuit

————————

No. 24-40685

————————

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2025

Lyle W. Cayce
Clerk

JUAN MANUEL TORRES,

*Plaintiff—Appellant*,

*versus*

MARCO RUBIO, *Secretary, U.S. Department of State*; UNITED STATES
OF AMERICA,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:21-CV-184

———————————————————————

Before ELROD, *Chief Judge*, and CLEMENT and HAYNES, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:[*]

When Juan Manuel Torres applied for a passport, the United States
Department of State ("Department") denied his application on the grounds
that he had not proven that he was born in the United States. Torres then
sued the Department for a declaration that he is a United States citizen by
birth. After a two-day bench trial, the district court concluded that Torres

————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

had not proven that he was born in the United States. Torres appealed, arguing that the district court did not properly weigh the evidence at trial. Because none of the district court's findings were clearly erroneous, we AFFIRM.

I

Torres submitted his passport application in March 2017. He included with the application a copy of a birth certificate that was purportedly issued by the state of Texas. The birth certificate was signed by a midwife, Elisa Meade, and indicated that Torres was born in San Benito, Texas, on March 29, 1994. The Department requested additional evidence regarding the circumstances of Torres's birth. In response, Torres sent additional documents, including a birth certificate indicating that Torres was born in Matamoros, Tamaulipas, Mexico, and a baptismal certificate indicating the same. The Department denied Torres's application in February 2021, finding that Torres had not shown by a preponderance of the evidence that he was born in the United States.

Torres then filed this action under 8 U.S.C. § 1503(a), seeking a declaratory judgment that he is a United States citizen. In April 2024, the district court held a two-day bench trial. At trial, Torres offered the testimony of his parents and Meade as well as documentary evidence to prove that he was born in San Benito, Texas.

In their testimonies, Torres's parents offered roughly the same narrative of Torres's birth. Torres's mother, San Juana Manzanares-Lopez, and his father, Jose Manuel Torres-Herrera, were both born in Mexico and lived in the border town of Matamoros. They both had Border Crossing Cards, so they would regularly walk across the Gateway International Bridge into Brownsville, Texas, to shop and visit family. Both parents testified that on March 29, 1994, they were waiting at a bus station to return to Matamoros

after an overnight stay in Texas. At the bus station, Manzanares began feeling stomach pain. A woman approached the couple, asked if they needed assistance, and offered to call someone who worked at a clinic to come help Manzanares. A middle-aged woman arrived a short time later and examined Manzanares. The woman then drove the couple to a house in San Benito, Texas, where Manzanares went into labor and gave birth to Torres around 10:00 that evening. Only Manzanares, Torres-Herrera, and the midwife were present during Manzanares's labor and delivery. The couple stayed in the house that night with their newborn son, and the next afternoon, the midwife drove them back to Matamoros. Days later, Torres-Herrera coordinated with the midwife to pick up the Texas birth certificate.

Manzanares also testified about an event approximately a year after Torres's birth during which immigration officers revoked her Border Crossing Card. In April 1995, Manzanares attempted to cross the Gateway International Bridge into Brownsville with Torres. A United States immigration official questioned Manzanares about whether her son was born in the United States or Mexico. An official prepared a written statement declaring that Manzanares initially claimed Torres was a United States citizen but later admitted that Torres "was really born in Matamoros" and Manzanares "had paid about $725.00 to a midwife" to obtain a Texas birth certificate for him. Manzanares signed a document confirming this statement. According to Manzanares, officers had separated her from her son before questioning her, and they coerced her to provide this statement by threatening to take Torres from her unless she told them that Torres was born in Mexico. After the meeting, officers confiscated Manzanares's Border Crossing Card and refused her entry into the United States.

Meade's testimony contradicted the testimony of Torres's parents. She testified that she never delivered a baby by herself, picked up a mother to drive her to the clinic, or examined any women outside of the clinic. She

3

did not recall any instance in which a mother came to the clinic in an emergency. Meade further testified that in 1996—about two years after Torres's birth—she was convicted of fraudulently registering a birth with the State of Texas. She pleaded guilty to only one instance, but she testified that she had fraudulently filed other Texas birth records. In 1997, Meade signed an affidavit stating that she had filed a false birth certificate for Torres. Although she did not recall the affidavit at trial, she did not deny that the affidavit bears her signature.

Torres's documentary evidence included both the Texas and Mexico birth certificates, his baptismal certificate, and vaccination and school records. Of these documents, only the Texas birth certificate corroborated Torres's claim that he was born in Texas. The Mexico birth certificate, baptismal certificate, and vaccination records all list Torres's place of birth as Matamoros.

After the trial, the district court entered an order and opinion concluding that Torres had not proven by a preponderance of the evidence that he was born in the United States. The district court found that the testimony of Torres's parents presented a version of Torres's birth that was "difficult to accept" because it presented "a highly coincidental encounter" that was contradicted by the "rest of the trial record." The court noted that the contemporaneously filed Texas birth certificate presumptively "carries significant evidentiary weight," but Meade's affidavit stating that she filed a false birth certificate for Torres "strips the Texas birth certificate" of any such weight. In addition, the court considered Manzanares's 1995 declaration to immigration officials. "Although Manzanares now claims that she never made those statements," the district court reasoned, "she does not deny that she signed a document containing that information." "Neither she nor Plaintiff offer any motivation for an Immigration Official to fabricate such statements, and cannot deny that for purposes of this lawsuit, it is in the

direct interest of Plaintiff for his mother to deny the 1995 confession." Concluding that Torres did not meet his evidentiary burden, the district court denied his requested declaratory relief. Torres timely appealed.

## II

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000); *see also* FED. R. CIV. P. 52(a)(6) (instructing that after a bench trial, "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous"). When reviewing for clear error, we owe "great deference" to the district court's findings. *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses," they are owed "even greater deference." *Id.* at 575; *see also* FED. R. CIV. P. 52(a)(6) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.").

## III

"If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department . . . upon the ground that he is not a national of the United States," then 8 U.S.C. § 1503(a) provides that person a cause of action "against the head of such department or independent agency for a judgment declaring him to be a national of the United States." At trial, Torres bore the burden of proving that he is a United States citizen by a

preponderance of the evidence. *De Vargas v. Brownell*, 251 F.2d 869, 870–71 (5th Cir. 1958).

Torres argues that the district court clearly erred in finding that he failed to show that he is a United States citizen by birth. Specifically, Torres challenges the weight the district court accorded to (1) the Texas birth certificate, (2) Meade's testimony, and (3) Manzanares's 1995 statement to immigration officials.

First, Torres contends that the district court did not give sufficient weight to the Texas birth certificate.[1] According to Torres, the Texas birth certificate is "primary" evidence of birth, so once he presented this document, it was improper for the district court to consider "secondary" evidence such as Torres's baptismal certificate and vaccination records.

But this distinction between primary and secondary evidence is derived from a regulation that does not bind district courts in § 1503 cases. Under 22 C.F.R. § 51.42, a regulation promulgated by the Department, a person born in the United States who is applying for a passport for the first time "generally must submit a birth certificate," which is "[p]rimary evidence of birth in the United States." 22 C.F.R. § 51.42(a) (2025). If a passport applicant cannot submit a birth certificate, the applicant "must submit secondary evidence sufficient to establish to the satisfaction of the Department that he or she was born in the United States." *Id.* § 51.42(b). Examples of secondary evidence include "hospital birth certificates, baptismal certificates, [and] medical and school records." *Id.* As Torres acknowledges, Department regulations may inform the district court's

---

[1] This challenge is subject to clear-error review because it is an attack on the weight the district court accorded certain evidence and the district court's findings were not premised on an erroneous view of controlling law. *See Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 395 (5th Cir. 1996).

reasoning, but they are not binding on the district court in a § 1503(a) case. Section 1503(a) "authorizes a *de novo* judicial determination of the status of the plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *accord Mathin v. Kerry*, 782 F.3d 804, 805 (7th Cir. 2015). In other words, a § 1503(a) action is an independent suit, "not one for judicial review of the agency's action." *Richards*, 752 F.2d at 1417. Department regulations do not restrict the kinds of evidence a district court can consider in its de novo determination of whether a plaintiff is a national of the United States. Thus, even if the district court ran afoul of this regulation, it was not clear error to do so because the district court was not bound by 22 C.F.R. § 51.42.

Regardless, the district court's analysis comported with the Department's regulations. While § 51.42 distinguishes between primary and secondary evidence, § 51.45 explains that "[t]he Department may require an applicant to provide *any* evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, *including evidence in addition to the evidence specified in 22 CFR 51.42* through 51.44." 22 C.F.R. § 51.45 (2025) (emphases added); *see also Martinez v. Sec'y of State*, 652 F. App'x 758, 764 (11th Cir. 2016) (per curiam) (relying on § 51.45 to reject a plaintiff's argument that the district court should have applied a "presumption of U.S. citizenship based on his Texas birth certificate" in a § 1503 action). Section 51.45 makes clear that, in an agency action governed by these regulations, the Department could require additional secondary evidence even if an applicant submits a birth certificate. Torres's assertion that secondary evidence should only be examined when primary evidence is unavailable is plainly at odds with the Department's regulations.

Torres further argues that the district court erred by considering the Mexico birth certificate because it was recorded after the Texas birth certificate. But "[t]here is no rule that older evidence is automatically more

credible" than newer evidence, and "the factfinder may consider numerous factors in determining what evidence is most convincing." *Salinas Moya v. Limon*, 793 F. App'x 296, 298 (5th Cir. 2019) (per curiam). The first-recorded Texas birth certificate is not entitled to more weight than the second-recorded Mexico birth certificate as a matter of law. Thus, the district court did not err in the weight it accorded the Texas birth certificate.

Next, Torres argues that the district court gave undue weight to Meade's testimony because of Meade's advanced age, "her admission that she suffers from memory problems," and inconsistencies in her testimony. Although Torres called Meade as a witness, he now identifies three moments during her testimony that purportedly cast doubt on her credibility. First, Meade, who was eighty-five years old at the time of the trial, mentioned in her testimony that she sometimes "forget[s] small things here or there." Second, when asked if she had "talk[ed] with" Torres's trial counsel on the morning of the trial, Meade answered, "No, only to say hi, and that's it." Third, Meade gave inconsistent answers about the cost of a birth. At her deposition, Meade stated that the clinic charged "about $300 or $350" to deliver a baby, but at trial, she testified that a live birth cost "[a]round 500 or 600" dollars. Later in her testimony, Meade stated that she would charge approximately $650 to register a false document, whereas she would charge $350 to register a legitimate birth certificate.

None of these "credibility issues" made the court's reliance on Meade's testimony clearly erroneous. We owe significant deference to the district court's determination that Meade's testimony was credible. *Anderson*, 470 U.S. at 575. Meade's passing statement that she "forget[s] small things here or there" by no means demonstrates that her testimony was clearly unreliable. Meade's testimony that she did not "talk with" Torres's counsel because she only said "hi" is more of a semantic distinction than a memory issue. And although Meade offered contradictory testimony about

the cost of a birth, Torres "fails to show how this inconsistency was particularly significant, let alone so important that it thoroughly undermined the district court's credibility choices." *Martinez*, 652 F. App'x at 762. In all, Torres has not shown clear error on this front.

Lastly, Torres argues that the record does not show that Manzanares's 1995 statement to immigration officials was voluntary, so it was error for the district court to consider Manzanares's confession. Again, Torres asks us to second-guess the district court's credibility determination, which is firmly supported by the record. The district court found that Manzanares's testimony was not credible for several reasons. First, the court found Manzanares's proposed timeline of Torres's birth "difficult to accept" because it presented "a highly coincidental encounter" that ran contrary to the bulk of the documentary evidence. *See Garcia v. Kerry*, 557 F. App'x 304, 309 (5th Cir. 2014) (per curiam) (affirming a district court's finding that the testimony of a plaintiff's mother was not credible because "her story rested on a series of unlikely coincidences" and her trial testimony "was inconsistent with her deposition testimony"). Second, as to Manzanares's claim that her confession was coerced, neither she nor Torres offered "any motivation for an Immigration Official to fabricate such statements." Third, the court doubted Manzanares's objectivity, noting that, "for purposes of this lawsuit, it is in the direct interest of [Torres] for his mother to deny the 1995 confession." *See De Vargas*, 251 F.2d at 871 (describing the testimony of a § 1503(a) plaintiff's fiancé as "an interested witness'[s] testimony" that should be "taken with a grain of salt"). In sum, there was ample support in the record for the district court's decision not to credit Manzanares's testimony.

No. 24-40685

## IV

Because the district court did not clearly err in the weight it accorded the Texas birth certificate, Meade's testimony, or Manzanares's 1995 admission to immigration officers, the judgment is AFFIRMED.